Okay, good morning. May it please this honorable court, I'm attorney Stephen Merrill of Anchorage who's here to present argument on behalf of the FCA Relator here, Arlene Cohen. In this, I'd like to reserve two minutes for rebuttal. In this appeal, there are three questions for the court to decide. Each question inquires whether a particular kind of liability in this FCA suit constitutes a quote-unquote false claim or at least raises enough evidence to create a factual question on that point. In this context, it must be proven that the acts of Appellee City of Palmer violated a policy or contracting practice of the federal government. Along the way, the standard formulated in the recent United Healthcare Services v. Escobar case from the U.S. Supreme Court is to be applied. Namely, whether the federal contracting authority for the EPA would have disallowed the grant work being awarded to Palmer had that authority known about the plans of Palmer alleged here to be wrongful. The first issue is what I've phrased as bid rigging. The second issue is the payment of enhanced Davis-Bacon wages. Let's take them individually because we know what the issues are. With respect to the one you call bid rigging, let me sort of rephrase it and have you respond to it. Your real contention is that they were required to bid out this work rather than simply do it in-house. Right, they definitely were required. Tell me where the law requires that. I'm having some difficulty concluding that having obtained this grant, the city was required to bid it out rather than simply do it in-house. Indeed, the underlying grant had a provision requiring that. You say that, but I read the grant and I don't see a provision in the grant that requires that. Tell me what it is. Do you have a specific site? This is all found on page 23 and 24 of the appellant's brief. No, no. Tell me where in the record there's a requirement. I know you've argued that. I'm not suggesting you haven't preserved the argument. Tell me where in the grant document it requires that the work be bid out as opposed to being done by the city. I will not have the site or the page number for that. Just quote the language that says that. Is this what you're looking for, the Steelwater Main Replacement Grant? That's one of two. Okay. Grantee will comply with ARRA requirements for this financial assistance award contained in these terms and conditions. If grantee fails to comply with the reporting requirements or other award terms, the state agency official shall take the appropriate enforcement or termination action. Is there something else? Your Honor, it's attachments four and five to the economic stimulus supplemental applications. And what do they say? They say the standard language that all the construction work here has to be competitively bid to the maximum reasonable amount possible. Tell me where I find that in the record. It's the application from Palmer, which later became the contract itself, and it's contained on attachments four and five in the record with the complaint that was filed there. You're saying in accordance with ARRA Section 1554, grantee agrees that it and its subgrantees or subcontractors will award contracts as fixed price contracts through the use of competitive procedures to the extent possible? Yes. Now go back to the AR. Does the AR require them to bid this out? Well, this was an ARRA contract, and it specifically provides for that. No, the request refers to the AR. The ARRA. ARRA. Right. And it says, in effect, we'll follow the ARRA to the extent we're required to. So as I read, I just don't see a requirement that this contract be bid out. And that's the federal government's position, obviously. It declined to move this case. So I'm just trying to find out where there's a requirement. I understand if they gave it to a private contractor, they'd have to have bid it. That's clear. The question is, what's the part of the law that says they can't just do the work internally? Well, there's a statute, a Labor Department section of the code, that says that all construction work of any kind across the federal government has to be competitively bid. Construction work? When it is contracted out. So the federal government does its own construction work on many occasions. Well, they wouldn't have a contract then. They wouldn't have a competitive bid. Right. That's right. And so that's the question here. Does this grant require that they go outside the city, if you will, to do the work? The one exception, one of the exceptions anyway, of that general requirement for open bidding says when a city locality called force account work wants the job, they have to petition the contracting authority to allow them to do the work, and they have to prove it's an emergency situation or that somehow money will be saved. But that's when they're contracting with someone. Here they've gotten a grant. Somebody gave them a pile of money to do a job. And you're saying when that happens, when they get a grant to do a job, they cannot do it internally. They must bid it out to the private sector. Well, now, admittedly, there's no money being paid because the feds are paying for all this. Right. But the actual contracts are called that. They're called grant contracts or just contracts. And it's because there is compensation because you're meeting all these additional requirements of the federal government, especially in a statute that's as specific as ours is. So you're saying the 1554 special contracting provisions that the grant is itself a contract. Yes. In fact, it's called a contract in its definition. And to imply it's not a contract would make it an absolute gift. Well, but if the grant is a contract, it was awarded as a fixed price contract, wasn't it? In other words, if the grant is the contract, it was awarded to the city under a fixed price. It was awarded to the city on the maximum price. The competitive bid could have been a lot less. Well, but I guess you can't be contending that the grant is the relevant contract, can you? Well, it's a contract that provides the biddings required. Well, that's what I'm having some difficulty with. We have a grant here to the city, correct? Yes. If that's the contract, that wasn't awarded through competitive bidding. The city just did a grant application. It was the city's obligation to set up. They were the grantee awardee. They had the obligation. I know that's your position. I'm just trying to find out where the law says that. The Department of Labor says that. In fact, incorporated right into the terms of this contract is an OMB guidance directive that states it all. The same language. But the city didn't award any contracts to anyone. See, had the city awarded contracts to someone, then I think 1554 would apply. The question is, is the city required to award a contract to someone to do this work, or can it simply do it itself? And you've pointed me to lots of provisions that say when you're contracting out work, it must be done competitively. My question is, where's the provision that says that the city simply can't do the work itself? Well, that was just mentioned by another justice we read from the contract. I didn't read that. I read the statute, and I'm also looking at the definition of contract for these purposes. The term contract means any prime contract which is subject wholly or in part to the labor standards of any of the acts. It goes on to say a state or local government is not regarded as a contractor under statutes providing loans, grants, or other federal assistance. So let me ask the question differently. What contract here should have been bid out? All the work to repair both the water main and then the- Was there a contract to repair the water main? Yes. Who was the contract entered into? Palmer and the EPA. But if the grant itself is the contract, that wasn't bid out. That's the grant. I'm talking about to do the actual work. Didn't the city not enter into any contracts for that but simply do it itself? Yeah, by dispensing with the bid, taking it for themselves. Okay, I understand your position. I'll give you a minute to make it. There were two other issues. There was the Davis-Bacon wages. Yes, Davis-Bacon wages. The district court tossed that out on jurisdictional grounds. That it didn't violate federal contracting practice or federal policy. Both all these issues revolve around that. This is a case where there's a 40% increase in the wages of the workers and their benefits for a period, for the wages anyway, for six months. On top of that, the highest municipal wage level in the country already existed in Alaska cities. The increased payments for benefits went directly to Palmer like a bonus. They'd have to pay the agreed price for the benefits and they would just get free money from the federal government on top of that. I don't believe any contracting authority would approve a situation like that, especially when it only applies to federal work. Well, if they'd contracted out this work to the private sector, wouldn't they have to pay the prevailing Davis-Bacon wage? Yes, they would. How much that would have been, would have been subject to, we can't really say right now. But the other contractor may not have taken the whole two and a half million. They probably didn't, two and a half million times two. They probably didn't plan to pay their workers 40% more. I doubt their workers in Alaska, there's no evidence in the record on this, but private workers in Alaska generally make less than public workers. Less. So we've got a 40% increase on that. So I suggest the Davis-Bacon wages here applied to a private company could be a lot less. But what's important here, maybe they don't want to bid, there are 2.5 million maximum contracts. A private bidder might have only bid two million. It would have been a big savings. Now how you determine it on damages, the district court is going to have to look at. There's diverse views on that. But certainly a private contractor, particularly without all these extra expenses Palmer put into the air of funding, easily could have bid less. Okay. You're over your time now, so thank you. Good morning, Your Honors. May it please the Court, my name is Kate Demarest. I represent the City of Palmer, the appellee here. Judge Gleeson correctly granted the City of Palmer's motion to dismiss the three claims that are at issue in this appeal. And the bottom line, one-sentence basis to affirm her conclusion is this. The complaint was properly dismissed because the relator did not plausibly allege that Palmer violated any statute, any regulation, or any contractual requirement. Could we turn to the point that your opponent made just at the very end? The city gets a contract, and let's assume they can do it themselves. Yes. And the way that they deal with the contract is they double or triple the wages of their employees. They didn't do that here. They just went up to Davis-Bacon levels. Would that give rise to a key-tam claim? No, Your Honor. As Judge Gleeson ruled on that Davis-Bacon claim. No, I understand the Davis-Bacon. I'm asking a hypothetical question. Do you have unlimited ability to raise the salaries of your employees to do the job without giving rise to a key-tam claim? I think the answer, I mean, the answer, of course, depends on a whole lot of circumstances regarding that. That's why I made up a silly hypothetical. I said you tripled the wages of your employees to do the job, and therefore the job used up the whole grant when it wouldn't have used it up otherwise. You would have to find a law, a rule, a regulation, a contractual provision that governed employee compensation such that by doing so you could have, keep in mind this is a fraud statute. Key-tam is meant to address fraud. Implied certification means that there is a scienter requirement that somebody at the grantee city, this hypothetical city that you're talking about, would have to know that what they're doing is not allowed because there's some rule on point that says we can't do this, and they would have to intentionally omit that information from their claim for payment, and you would also have to find that the government would have denied the claim that it's material. The government would have denied it if they had known. So, you know, assuming there is some regulation on point regarding the appropriate compensation under a claim, under your hypothetical, maybe, but if there isn't one, then I don't think so, Your Honor, because of the basic need for a regulation on point, the need for knowledge, insight, and material. Is there anything in your application that implies that if city workers are going to be used, they will be used at their existing wage level? No, Your Honor, there's nothing in the applications regarding that point. Should the government, would the government have assumed that in looking at it, that you would use them at the wage level? Is there anything about their existing wage levels, for example, in the application? No, nothing about existing wage levels, nothing, no, you know, no regulation on point, no portion of the application where the city of Palmer represented anything to the federal government about what they would be paid. And, you know, the reason, this goes beyond, you know, what Judge Gleeson considered and what this court would consider for a motion to dismiss, but the payment, the reason the city of Palmer did this is because they were concerned that it might be the case that they were required under federal law to pay Davis-Bacon wages. It turned out that was not the case, but there's a letter, I think it's at 51 of the excerpt of record, where the city manager, Bill Allen, explains that they took the conservative course of action here because they thought it was possible that this might be required by the federal government, so they better do it. They later concluded that was not the case, and they returned the workers' wages back to their usual level. So... Did they return to their usual level for work done on this contract? Yes. Okay, I couldn't tell whether that was just a temporal thing or whether it was done on... Right, right, while these projects were still going on, that happened. Returning to the discussion about Section 1554, Judge Gleeson concluded that on its face, that statute applies only to contracts funded under the ARRA, as you discussed with Appellant's Counsel, and even then it only requires competitive procedures to the maximum extent possible. This is very different than what the federal government does when they want to prohibit or limit the use of force-account labor, and the regulations cited by Ms. Cohen make that point beautifully, and we cited at Note 5 of our brief the language of 23 U.S.C. Section 112, which is a statutory provision applying to highway construction projects, specifically so defined, transportation projects, and under those, within that type of project, there must be competitive bidding procedures in almost every case, and there's very detailed regulations on point about what you have to do if you plan to use force-account labor. None of that applies under 1554 to this type of project, and so it's just clear that Judge Gleeson was correct when she said that... I heard counsel say that the law says that all work must be competitively bid. Well, that's exactly what the statute does not say. Well, contracts may have to be competitively bid, or to the extent possible, but you never enter into a contract with anyone. Right, not all work, not work performed by grantees. The third one is the alleged failure to create jobs. Judge Gleeson correctly said here that the Second Amended Complaint and the Appellant takes an overly narrow view of what job creation means and what promotion of economic growth means. There is nothing in the application signed by the city of Palmer to suggest that Palmer was obliged to use the ARRA funds to create some specific identifiable job. This is job creation in the macroeconomic sense. This is the purpose of the Stimulus Act. Do you buy products to complete this task? Yes, and in fact, as Judge Gleeson recognized in her order, I think it's at note 51, the Second Amended Complaint itself, on its face, acknowledges that pipes were purchased from Ferguson Enterprises, which is a private sector, in order to complete this project because, of course, the city of Palmer is not itself fabricating pipe. It had to purchase that from someone else. And so even if Judge Gleeson and the city of Palmer are wrong and somehow, despite the absence of any regulation on point, job creation means something much narrower and more like the Appellant suggests, it is impossible, and there is no plausible allegation at all, that anybody at the city of Palmer could have understood that new, narrow meaning of job creation and knowingly intended to evade it. Anything else? Unless the Court has questions, we'd simply ask you to affirm Judge Gleeson's decision. Okay, thank you. Thank you, Your Honor. A short one-minute rebuttal. All right, sure. On this question of Scienter, it was the city manager and the advice of the public works supervisor who made the decision. It's not the ladies writing the check or figuring out the amount owed. They're not the ones making the decision. So the Scienter is directly with the highest officials in the city. Now, if Palmer had a question about whether this bidding can be done to the extent possible, all it had to do was file that paperwork required by the Code of Federal Regulations to allow them to do it. That's how you take care of the extent possible. What CFR are you talking about? What CFR? Yeah. Let's sign it at page 23 or 24. 23, Code of Federal Regulations, Section 635, Subpart B, Department of Labor, Wage and Hour Division. That's your highway contract, right? Yes. It's not a highway contract. It's not a highway contract, but HHS has a similar requirement. And EPA has never been in the business of doing this kind of work, this kind of grant work, something totally new to them. So the EPA had no opportunity to create these same kinds of rules. Now, if the rules that apply to highways and to making buildings for the poor apply, it should apply. There's no reason not to apply it across the board, I would suggest. Plus, as I mentioned, the contract does call for it, and so does that Code of Federal Regulations. Thank you. Thank you very much. The matter is submitted. Thank you, counsel. We appreciate your arguments in this matter.
judges: Fisher, Paez, Hurwitz